**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
PETER BORDES, JR.,

                      Plaintiff,

          -against-

MARC DEVEAUX,

                   Defendant.
-----------------------------------------------------------------X

|  | **REPORT &**<br>**RECOMMENDATION** |
|---|---|
|  | **23-CV-7430 (JPC) (JW)** |

**JENNIFER E. WILLIS, United States Magistrate Judge:**

**To the Honorable JOHN P. CRONAN, United States District Judge:**

## BACKGROUND

The instant case was referred to the Court for general pretrial matters and dispositive motions. Dkt. No. 33. Dueling motions for summary judgment are currently before the Court. Dkt. No. 37, 38. Plaintiff Peter Bordes, Jr. ("Plaintiff") alleges that defendant Marc Deveaux ("Defendant") defamed him on the website LinkedIn. Dkt. No. 4, at 4-5. Defendant, in his motion for summary judgment, asks the Court to dismiss all of Plaintiff's claims. Dkt. No. 37, Attach. 11, at 1. Plaintiff, in his partial motion for summary judgment, asks the Court to find in his favor with regards to only his libel *per se* claims. Dkt. No. 38, Attach. 1, at 1. For the following reasons it is recommended that Defendant's motion for summary judgment be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED**.

**FACTS[1]**

Plaintiff is an investor and sits on the board of several companies, both private and publicly traded, and many of them are focused on artificial intelligence ("AI"). Dkt. No. 38, Attach. 2, at 2. Plaintiff was an initial investor and board member of a cryptocurrency trading firm called Qandlestick, LLC ("Qandlestick"). Dkt. No. 38, Attach. 3, at 2. Defendant and Plaintiff met in October 2018 to discuss "a potential business venture." Dkt. No. 38, Attach. 5, at 33. That meeting led to Defendant joining Qandlestick as the Chief Technology Officer, where he developed a product that provided "a way to view cryptocurrency prices across different exchanges." Dkt. No. 38, Attach. 5, at 33.

In 2021, Qandlestick was acquired by Fernhill Corp. ("Fernhill"), a financial services firm that Plaintiff was also a board member of. Dkt. No. 38, Attach. 4, at 14; Dkt. No. 38, Attach. 2, at 2. As part of the acquisition, the parties both became minority shareholders of Fernhill. Dkt. No. 38, Attach. 2, at 3; Dkt. No. 38, Attach. 4, at 2. Defendant worked for Fernhill, under its newly acquired Qandlestick division. Dkt. No. 38, Attach. 4, at 19. After several years, Defendant and Fernhill parted ways, though the parties disagree about when, how, and why. According to Defendant, he resigned from Fernhill and left October 31, 2022. Id. According to Plaintiff, Fernhill

---

[1] The facts are drawn from the parties' statements of undisputed facts as well as the exhibits attached to their summary judgment motions. Additionally, the Court presumes familiarity with the facts of this action and only states those necessary to resolve the instant motion.

2

terminated Defendant around January 4, 2023 for violating the non-compete clause of his employment contract. Dkt. No. 38, Attach. 5, at 117.

In February 2023, Defendant filed a suit in this District alleging that Plaintiff withheld wages he earned between December 2020 and January 2022, in violation of New Jersey's Wage Payment Law. Id.; Deveaux v. Bordes, No. 23-cv-1115 (AT), ECF No. 5 (S.D.N.Y. Feb. 10, 2023); N.J. STAT. ANN. 34:11-4.1.

While Defendant's lawsuit against Plaintiff was pending, Defendant submitted a complaint about Fernhill to the United States Securities and Exchange Commission ("SEC") on August 16, 2023. Dkt. No. 37, Attach. 4, at 1; Dkt. No. 38, Attach. 7, at 1. In Defendant's complaint to the SEC, he alleged that those controlling Fernhill had the "[c]ompany written off [as] part of [a] promissory note ($825,000) and an escrow account ($150,000), and cancelled all interest due (~$100,000), under the guise of debt restructuring. However, [they] did not approach the note holders, or get their agreement." Id.

The most relevant fact for the instant case occurred four days after Defendant submitted his complaint to the SEC. On August 20, 2023, Defendant posted three comments to three different posts on the website LinkedIn.[2]

"Peter Bordes is currently being sued for Wage Theft."

"Peter Bordes' company reported to SEC for Accounting Fraud."

---

[2] Self-described as the "the world's largest professional network," LinkedIn has "more than 1 billion members in more than 200 countries and territories worldwide." ABOUT LINKEDIN, https://about.linkedin.com (last visited Feb. 6, 2025).

"Peter Doo-Doo head, know shit about AI."

Dkt. No. 38, Attach. 9, Ex. A, at 1; Id., Attach 4, at 12; Id., Attach. 5, at 85. The "Wage Theft" comment was made on a post made by Plaintiff promoting an interview he had done with CNBC about AI. Dkt. No. 38, Attach. 9, at 7. The "Accounting Fraud" comment was made on a post promoting an AI platform that can detect financial fraud called Fraud.net[3]. Id. The "AI" comment was made on a post written by Plaintiff sharing his thoughts on AI's effect on the job market. Id.

Shortly thereafter, three people, who saw Defendant's comments, reached out to Plaintiff to inform him. Dkt. No. 38, Attach. 10, at 4. Plaintiff subsequently had "trouble sleeping" for "many" nights "from stress and anxiety about [his] reputation," one he had worked "a long time to build up." Dkt. No. 40, Attach. 1, at 1.

Two days after those comments were posted, on August 22, 2023, Plaintiff filed the initial complaint for the instant case. Dkt. No. 1. The Complaint alleges three claims against Defendant – libel *per se*, libel *per quod*, and intentional infliction of emotional distress ("IIED"). Dkt. No. 4, 4-6. Defendant deleted the comments several days after Plaintiff filed the initial complaint. Dkt. No. 38, Attach. 5, at 85-86; Dkt. No. 40, Attach. 1, at 3-4.

An amended complaint was filed in the instant case on August 29, 2023. Dkt. No. 4. In the instant case, discovery ended in June 2024 and the parties filed their dueling motions for summary judgment in July 2024. Plaintiff's motion for summary

---

[3] Plaintiff also sits on the board of Fraud.net, which provides an "AI-powered platform for finance and technology companies to detect various forms of financial fraud." Dkt. No. 38, Attach. 2, at 2.

4

judgment in Defendant's case concerning wages was subsequently granted and that case was dismissed on September 10, 2024. Deveaux v. Bordes, No. 23-cv-1115 (AT), 2024 WL 4135257 (S.D.N.Y. Sept. 10, 2024).

## LEGAL STANDARD

### I.    Summary Judgment

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a "genuine dispute" when a reasonable jury could return a verdict for the nonmoving party. Guillen v. City of New York, No. 19-cv-5655 (JPC), 625 F. Supp. 3d 139, 148 (S.D.N.Y. 2022). A fact is "material" if it may affect the outcome of a suit under the applicable law." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000). A court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant may discharge its burden by showing that the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. If the moving party meets their initial burden, the nonmoving

party must demonstrate specific facts establishing a genuine issue for trial, using affidavits or other evidence in the record and cannot rely on the mere allegations or denials contained in the pleadings. <u>Taylor v. City of New York</u>, No. 19-cv-6754 (KPF), 2022 WL 744037, at *6 (S.D.N.Y. Mar. 11, 2022).

## II.    Choice-of-Law

The Court must first determine which state's substantive laws apply to the instant case. The basis for subject matter jurisdiction in this case is diversity of citizenship pursuant to 28 U.S.C. § 1332. Dkt. No. 4, at 1. Plaintiff resides in New York and Defendant resides in Florida. Dkt. No. 38, Attach. 4, at 5; Dkt. No. 4, at 1. The parties agree that New York's laws on libel and IIED apply to the instant case. Dkt. No. 38, at 6; Dkt. 37, Attach. 11, at 4.

The parties are correct. A federal court sitting in diversity applies the choice-of-law rules of the forum state, therefore New York's choice-of-law rules control the instant case. <u>Md. Cas. Co. v. Cont'l Cas. Co.</u>, 332 F.3d 145, 151 (2d Cir. 2003) (quotation and citation omitted). Under New York's choice-of-law rules, a court must determine if there is an actual conflict between the rules of the relevant jurisdictions. <u>Booking v. Gen. Start Mgmt. Co.</u>, 254 F.3d 414, 419-20 (2d Cir. 2001) (citation omitted).

The libel laws of New York and Florida do not conflict, as they both require the publication of a defamatory false statement with at least a negligent *mens rea* that causes actual damages for libel *per quod* or fits within a libel *per se* category.

6

McQueen v. Baskin, 377 So. 3d 170, 176 (Fla. Dist. Ct. App. 2023); Yoo v. Choi, 210 A.D.3d 1062, 1063, 179 N.Y.S.3d 326, 328 (2022). Like the libel laws, New York and Florida's laws on IIED do not conflict, as they both require an extreme and outrageous conduct that caused severe emotional distress with either intentional or reckless *mens rea*. Deauville Hotel Mgmt., LLC v. Ward, 219 So. 3d 949, 954–55 (Fla. Dist. Ct. App. 2017); Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993). Accordingly, the Court will apply New York law to Plaintiffs' substantive claims. Hanly v. Powell Goldstein, LLP, No. 05-cv-5089 (KMW), 2007 WL 747806, at *4 (S.D.N.Y. Mar. 9, 2007) (without conflict, no further choice-of-law analysis is necessary, and the court applies New York's law.).

Assuming *arguendo* that the laws of both states conflicted, New York's choice-of-law rules would require the application of New York's laws. New York applies the law of the state with the most significant interest in the litigation. Kinsey v. New York Times Co., 991 F.3d 171, 177 (2d Cir. 2021).

To determine which state has a more "significant relationship," New York courts weigh several factors, such as: (1) where plaintiff suffered the greatest injury; (2) where the statements emanated and were broadcast; (3) where the activities to which the allegedly libelous statements took place; and (4) the policy interests of the states whose law might apply. Id. (citing Condit v. Dunne, No. 02-cv-9910 (PKL), 317 F. Supp. 2d 344, 353-54 (S.D.N.Y. 2004)). Although Defendant's relevant statements originated outside New York, the factors weigh in favor of applying New York law as

7

Plaintiff is domiciled in New York, Plaintiff's home state is where Plaintiff's reputation is most likely damaged, and New York has a greater interest in protecting its citizens from tortious conduct. Therefore, New York's law on libel applies in the instant case.

With IIED claims, New York's choice of law rules requires the court to apply the law of "the place of the tort." In re Terrorist Attacks on Sept. 11, 2001, No. 03-md-1570 (GBD) (SN), 2023 WL 5207985, at *2 (S.D.N.Y. Aug. 14, 2023). The "place" is where the last event necessary to make the defendant liable occurred. Id. (citation omitted). The alleged "emotional distress" occurred where the Plaintiff resided, and therefore New York law applies.

### III.    Libel

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Harding v. Dorilton Cap. Advisors LLC, No. 22-cv-1726 (CM), 635 F. Supp. 3d 286, 306 (S.D.N.Y. 2022). "Written statements actionable as libel include statements published on social media outlets and on the Internet." Carroll v. Trump, No. 22-cv-10016 (LAK), 650 F. Supp. 3d 213, 225. (S.D.N.Y. 2023). The instant case concerns Defendant's written comments on the internet, therefore the laws concerning libel control. Id.

Libel has five elements: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on plaintiff's status); (4) falsity of the defamatory statement; and

8

(5) special damages [*per quod*] or *per se*. <u>Celle v. Filipino Rep. Enterprises Inc.</u>, 209 F.3d 163, 176 (2d Cir. 2000).

New York law recognizes certain categories of statements as libel *per se*, making them actionable without pleading and proof of special damages. <u>Id.</u>, at 179; <u>Goldfarb v. Channel One Russia</u>, No. 18-cv-8128 (JPC), 663 F. Supp. 3d 280, 299 (S.D.N.Y. 2023). Although there are four categories of slander *per se*, there are only two generally recognized libel *per se* categories.[4] <u>Carroll</u>, 650 F. Supp. 3d at 225; <u>Goldfarb</u>, 663 F. Supp. 3d at 299; <u>Conti v. Doe</u>, No. 17-cv-9268 (VEC), 2019 WL 952281, at*7 (S.D.N.Y. 2019). One *per se* category is a writing that "tends to disparage a person in the way of his office, profession, or trade." <u>Id.</u> Another is a writing that "tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him [or her] in the minds of a substantial number of the community, even though it may impute no moral turpitude to him [or her]." <u>Carroll</u>,

---

[4] Libel *per se* categories involve one narrow category concerning writings about one's profession and one broad category concerning writings that "tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him [or her] in the minds of a substantial number of the community, even though it may impute no moral turpitude to him [or her]." <u>Carroll</u>, 650 F. Supp. 3d at 225. Slander *per se* categories involve four narrow categories: (1) charging plaintiff with a serious crime; (2) that tend to injure another in his or her trade, business or profession; (3) that plaintiff has a loathsome disease; or (4) imputing unchastity to a woman." <u>Liberman v. Gelstein</u>, 80 N.Y.2d 429, 435, 605 N.E.2d 344, 347 (1992). There has been a debate as to whether it is prudent to maintain legal distinctions between oral and written communication, but with the internet, it seems that those distinctions between libel and slander will eventually be replaced by the single tort of "defamation." <u>Sack on Defamation</u>: Libel, Slander, and Related Problems § 2:3 (5th ed. 2017). Some courts have collapsed the distinction and have applied slander *per se*'s four categories to libel. <u>See Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.</u>, No. 18 CIV. 1736 (ER), 2019 WL 1259102, at *8 (S.D.N.Y. Mar. 19, 2019); <u>LeBlanc v. Skinner</u>, 103 A.D.3d 202, 214, 955 N.Y.S.2d 391, 401 (2012); <u>VIP Pet Grooming Studio, Inc. v. Sproule</u>, 224 A.D.3d 78, 90, 203 N.Y.S.3d 681, 691 (2024). Some have not. <u>Contra Carroll</u>, 650 F. Supp. 3d at 225; <u>Goldfarb</u>, 663 F. Supp. 3d at 299; <u>Conti</u>, 2019 WL 952281, at*7.

650 F. Supp. 3d at 225 (citing <u>Nichols v. Item Publishers</u>, 309 N.Y. 596, 600, 132 N.E.2d 860, 861 (1956)).

## IV.    IIED

IIED has four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and [plaintiff's] injury; and (4) severe emotional distress." <u>Brown v. Riverside Church in City of New York</u>, 231 A.D.3d 104, 109, 216 N.Y.S.3d 144, 149 (2024) (citing <u>Chanko v. American Broadcasting Cos. Inc.</u>, 27 N.Y.3d 46, 56, 29 N.Y.S.3d 879, 49 N.E.3d 1171 (2016)). Unlike libel and other intentional torts, IIED "does not proscribe specific conduct, but imposes liability based on after-the-fact judgments about the actor's behavior. <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993). Worried about how broad this cause of action could be in what conduct it could regulate, those drafting the Restatement of Torts inserted the element of "extreme and outrageous conduct" to narrow it, which New York adopted. <u>Id.</u> The conduct must be "so outrageous in character, and so extreme in degree," that it goes "beyond all possible bounds of decency," and is "regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> (citing Restatement [Second] of Torts § 46, comment d).

## DISCUSSION

Defendant, in his motion for summary judgment, asks the Court to dismiss all of Plaintiff's claims. Dkt. No. 37, Attach. 11, at 1. Defendant argues that none of the

three comments constitute libel *per quod* or libel *per se* because two of the comments, specifically the "Wage Theft" and "Accounting Fraud" comments, are factually correct, and the "AI" comment is a non-actionable opinion. Dkt. No. 37, Attach. 11, at 4. Defendant also argues that the none of the comments amount to "extreme and outrageous conduct," which a successful IIED claim requires. Id., at 6.

Plaintiff, in his partial motion for summary judgment, asks the Court to find in his favor with regards to his libel *per se* claims. Dkt. No. 38, Attach. 1, at 1. Plaintiff argues that all three comments are libel *per se*, as they are all "provably false statements of fact or mixed opinion" that affect Plaintiff's profession. Dkt. No. 38, Attach. 1, at 9. The Court will consider each statement individually.

## I.    "Peter Bordes is currently being sued for Wage Theft"

### A. Libel

In Defendant's motion for summary judgment, he contends that the Plaintiff's libel claims as to the "Wage Theft" comment must be dismissed. Dkt. No. 37, Attach. 11, at 4. To support this, Defendant makes several arguments. First, Defendant argues that the "Wage Theft" comment is "factually correct" because "[i]t is undisputed that Defendant had filed a Complaint under the New Jersey Wage Payment Act," and the failure to pay wages is also "known as wage theft." Id., at 4-5. In response, Plaintiff argues that the evidence Defendant seeks to use to show that the failure to pay wages is also known as wage theft was "never made part of the record," and would be inadmissible for consideration at trial or summary judgment.

Dkt. No. 40, at 5. Second, Defendant argues that Plaintiff has "no proof that he suffered any actual damage." Dkt. No. 37, Attach. 11, at 5. In response, Plaintiff argues that Defendant is mistaken because Plaintiff testified that "the LinkedIn comments caused [him] persistent sleeplessness and anxiety." Dkt. No. 40, at 1, 6. Third, Defendant argues that the "Wage Fraud" comment is not libel *per se* because it does not concern a crime of moral turpitude because "under the New Jersey Wage Payment Act... the failure to pay wages is a disorderly person offense which may be punishable by a fine or imprisonment." Dkt. No. 37, Attach. 11, at 5. In response, Plaintiff argues that it is libel *per se* because Defendant alleges that he engaged in a "serious crime." Dkt. No. 38, Attach. 1, at 9.

Here, Defendant's comment that Plaintiff "is currently being sued for Wage Theft" is substantially true. "Substantial truth" is a complete defense to defamation. Conti, 535 F. Supp. 3d at 272. New York law requires only "substantial," not literal truth. Chau v. Lewis, 771 F.3d 118, 129 (2d Cir. 2014) ("In New York, a statement need not be *completely* true, but can be *substantially* true, as when the overall gist or substance of the challenged statement is true") (quotation and citation omitted).

It is uncontested that Defendant's lawsuit against Plaintiff for wages under New Jersey's Wage Payment Act was pending when the "Wage Theft" comment was made. Deveaux v. Bordes, No. 23-cv-1115 (AT), ECF No. 5 (S.D.N.Y. Feb. 10, 2023); N.J.S.A. 34:11-4.1. However, the parties disagree as to how to accurately describe this lawsuit. On LinkedIn, Defendant wrote "[Plaintiff] is currently being sued for

Wage Theft." Dkt. No. 38, Attach. 9, Ex. A, at 1. Plaintiff suggests that a more accurate comment would be "I filed a suit for unpaid wages against [Plaintiff], who sat on the board of my former employer." Dkt. No. 38, Attach. 1, at 13.

"When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC, 864 F.3d 236, 243 (2d Cir. 2017) (quoting Fleckenstein v. Friedman, 266 N.Y. 19, 23, 193 N.E. 537 (1934)). Given how "near" Defendant's "Wage Theft" comment is to Plaintiff's provided revision, "no legal harm has been done." Defendant's "Wage Theft" comment is substantially true, and because "substantial truth" is a complete defense to libel, the Court recommends granting Defendant's motion for summary judgment as to the libel *per quod* and *per se* claims concerning Defendant's "Wage Theft" comment and dismissing them. Celotex, 477 U.S. at 323 (summary judgment appropriate when a nonmoving party has failed to make a showing sufficient to establish the existence of an essential element.). Accordingly, the Court also recommends denying Plaintiff's motion for summary judgment as to the libel *per se* claim concerning the "Wage Theft" comment.

Additionally, assuming *arguendo* that Defendant's "Wage Theft" comment was "substantially false," Plaintiff's libel *per se* claim concerning "serious crime" nevertheless warrants dismissal. Unlike slander, libel *per se* does not include a

13

category of "serious crime." Goldfarb, 663 F. Supp. 3d at 299; See supra at 8, n. 4.

Plaintiff provides the case Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.,

No. 18 CIV. 1736 (ER), 2019 WL 1259102, at *8, where the Travelex court applies the

four slander *per se* categories to a writing. The Court declines to follow Travelex

because the cases it cites for this proposition concern spoken defamation or slander.

Id. (citing Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F.

Supp. 2d 489, 550 (S.D.N.Y. 2011); Liberman v. Gelstein, 80 N.Y.2d 429, 435, 605

N.E.2d 344, 347 (1992)). Moreover, even if the Court applied the slander *per se*

standard, dismissal would still be warranted. Defendant's "Wage Theft" comment

would not fit within the "serious crime" category because New York courts have held

that "serious crime" slander must be felonious. Corsini v. Morgan, 123 A.D.3d 525,

527 (1st Dep't. 2014). One found violating New Jersey's Wage Payment Act can be, at

most, "guilty of a misdemeanor." N.J. STAT. ANN. § 34:11-56.6.

## B. Intentional Infliction of Emotional Distress

In Defendant's motion for summary judgment, he contends that the Plaintiff's

IIED claim as to the "Wage Theft" comment must be dismissed. Dkt. No. 37, Attach.

11, at 6. In support of their motion, Defendant makes several arguments. First,

centering on the "extreme and outrageous conduct" element, Defendant argues that

a lawsuit for "theft of wages" are "every day occurrences in our society," and although

"these accusations may be upsetting" they do not give rise to extreme and outrageous

conduct. Id. In response, Plaintiff argues that the "Wage Theft" comment is "arguably

outrageous because they publicly accuse" Plaintiff of committing theft in a "professional forum." Dkt. No. 40, at 8. Second, Defendant argues that he never posted the comment with "malice," as he only wanted to show that he was annoyed because he had not been paid the wages he earned. Dkt. No. 37, Attach. 11, at 6. In response, Plaintiff argues that Defendant's "annoyance" does not "establish an absence of a genuine dispute of fact regarding Defendant's intent." Dkt. No. 40, at 7. Third, Defendant argues that "other than hurt feelings, Plaintiff suffered no provable actual damage." Dkt. No. 37, Attach. 11, at 7. In response, Plaintiff argues that he proved damages because he testified that the comments caused "persistent sleeplessness and anxiety." Dkt. No. 40, at 6; Dkt. No. 40, Attach. 1, at 1.

Here, the Court recommends granting Defendant's motion for summary judgment and dismissing Plaintiff's claim of IIED from Defendant's "Wage Theft" comment because the comment falls short of the very strict standard of "extreme and outrageous conduct." Brown v. Riverside Church in City of New York, 231 A.D.3d 104, 109, 216 N.Y.S.3d 144, 149 (2024) (The element of "extreme and outrageous conduct" is "the most demanding element to meet" because it acts to filter out "petty and trivial complaints" and "assure[s] that a plaintiff's claim of severe emotional distress is genuine."); Celotex, 477 U.S. at 323 (summary judgment appropriate when a nonmoving party has failed to make a showing sufficient to establish the existence of an essential element.). For conduct to be "extreme and outrageous," it must go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized society." <u>Fischer</u>, 43 N.Y.2d 553, at 373. In a somewhat analogous New York case, <u>La Duke v. Lyons</u>, the plaintiff sued her former colleagues and hospital employer, alleging that they intentionally inflicted emotional distress upon her by spreading a lie about her euthanizing patients. 250 A.D.2d 969, 973, 673 N.Y.S.2d 240, 244 (1998). The lie was also submitted to the District Attorney. <u>Id.</u> Similar to the instant case, the plaintiff was accused of a crime related to her profession, though a significantly more "outrageous" crime, but the <u>La Duke</u> court held that the defendant's conduct fell short of the "outrageous conduct necessary" to support an IIED claim. <u>Id.</u>, at 972.

Dismissal of Plaintiff's IIED claim would be warranted on an additional ground if either of Plaintiff's libel claims survived summary judgment because the IIED claim would be duplicative of the libel claims. Under New York law, a court must dismiss an IIED claim if they rely on the same underlying facts of an accompanying defamation claim. <u>Matthaus v. Hadjedj</u>, 148 A.D.3d 425, 425, 49 N.Y.S.3d 393, 394 (2017); <u>McCollum v. Baldwin</u>, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023); <u>Wolkstein v. Morgenstern</u>, 275 A.D.2d 635, 637, 713 N.Y.S.2d 171 (N.Y. App. Div. 1st Dep't 2000) ("Generally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action."). It is undisputed that Plaintiff's IIED and libel claims rely on the same underlying facts. Dkt. No. 4, at 4-6. New York law requires dismissal because they are duplicative.

## II.    "Peter Bordes' company reported to SEC for Accounting Fraud"

### A. Libel

In Defendant's motion for summary judgment, he contends that the Plaintiff's libel claims as to the "Accounting Fraud" comment must be dismissed. Dkt. No. 37, Attach. 11, at 4. To support this, Defendant makes several arguments. First, Defendant argues that the "Accounting Fraud" comment is "factually correct" because he made a complaint to the SEC about Fernhill's accounting practices, and Plaintiff is "board member" of Fernhill. Id.; Dkt. No. 38, Attach. 5, at 87, 92. In response, Plaintiff argues that the comment is false because SEC compliant "on its face" is directed only at Fernhill and does not blame or name Plaintiff. Dkt. No. 40, at 5. Second, Defendant argues that Plaintiff has "no proof that he suffered any actual damage." Dkt. No. 37, Attach. 11, at 5. In response, Plaintiff argues that Defendant is mistaken because Plaintiff testified that "the LinkedIn comments caused [him] persistent sleeplessness and anxiety." Dkt. No. 40, at 6; Dkt. No. 40, Attach. 1, at 1.

Here, like the "Wage Theft" comment, Defendant's comment that "[Plaintiff's] company reported to SEC for Accounting Fraud" is substantially true. "Substantial truth" is a complete defense to defamation. Conti, 535 F. Supp. 3d at 272. Again, New York law requires only "substantial," not literal truth. Chau, 771 F.3d at 129. It is uncontested that Defendant submitted a complaint to the SEC alleging that Fernhill had submitted "material misstatement[s] or omission[s] in [their] public filings or financial statements." Dkt. No. 38, Attach. 7, at 2. It is also uncontested that Plaintiff

17

was a board member of Fernhill. Dkt. No. 38, Attach. 1, at 12. Like Defendant's "Wage Theft" comment, the parties disagree as to how to accurately describe Defendant's complaint to SEC and Fernhill's relationship to the Plaintiff. On LinkedIn, Defendant wrote "[Plaintiff's] company reported to SEC for Accounting Fraud." Dkt. No. 38, Attach. 4, at 12. Plaintiff suggests that a more accurate comment would be "I filed a complaint with the SEC against Fernhill for accounting fraud, and [Plaintiff] is a board member of Fernhill." Dkt. No. 38, Attach. 1, at 13.

"When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." Tannerite Sports, LLC, 864 F.3d at 243 (quoting Fleckenstein, 266 N.Y. at 23). Given how "near" Defendant's "Accounting Fraud" comment is to Plaintiff's provided revision, "no legal harm has been done." Defendant's "Accounting Fraud" comment is substantially true, and because "substantial truth" is a complete defense to libel, the Court recommends granting Defendant's motion for summary judgment as to the libel *per quod* and *per se* claims concerning Defendant's "Accounting Theft" comment and dismissing them. Celotex, 477 U.S. at 323 (summary judgment appropriate when a nonmoving party has failed to make a showing sufficient to establish the existence of an essential element.). Accordingly, the Court recommends denying Plaintiff's motion for summary judgment as to the libel *per se* claim concerning the "Accounting Theft" comment.

18

### B. Intentional Infliction of Emotional Distress

In Defendant's motion for summary judgment, he contends that the Plaintiff's IIED claim as to the "Accounting Fraud" comment must be dismissed. Dkt. No. 37, Attach. 11, at 6. In support of his motion, Defendant makes several arguments. First, centering on the "extreme and outrageous conduct" element, Defendant argues that "[r]eporting accounting fraud to the SEC" are "every day occurrences in our society," and although "these accusations may be upsetting" they do not give rise to extreme and outrageous conduct. Id. In response, Plaintiff argues that the "Accounting Fraud" comment is "arguably outrageous because they publicly accuse" Plaintiff of fraud in a "professional forum." Dkt. No. 40, at 8. Second, Defendant argues that "other than hurt feelings, Plaintiff suffered no provable actual damage." Dkt. No. 37, Attach. 11, at 7. In response, Plaintiff argues that he proved damages because he testified that the comment caused "persistent sleeplessness and anxiety." Dkt. No. 40, at 6; Dkt. No. 40, Attach. 1, at 1.

Here, like the IIED claim concerning "Wage Theft," the Court recommends granting Defendant's motion for summary judgment and dismissing Plaintiff's claim of IIED from Defendant's "Accounting Fraud" comment because the comment falls short of the very strict standard of "extreme and outrageous conduct." Brown, 231 A.D.3d at 109 (The element of "extreme and outrageous conduct" is "the most demanding element to meet" because it acts to filter out "petty and trivial complaints" and "assure[s] that a plaintiff's claim of severe emotional distress is genuine.");

<u>Celotex</u>, 477 U.S. at 323 (summary judgment appropriate when a nonmoving party has failed to make a showing sufficient to establish the existence of an essential element.). For conduct to be "extreme and outrageous," it must go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Fischer</u>, 43 N.Y.2d 553, at 373; <u>Ratto v. Oliva</u>, 195 A.D.3d 870, 150 N.Y.S.3d 297, 300 (2021); <u>Kaye v. Trump</u>, 58 A.D.3d 579, 873 N.Y.S.2d 5, 6 (1st Dep't 2009) (holding that making rude remarks, commencing two baseless lawsuits, and attempting to instigate an arrest were insufficiently extreme and outrageous to give rise to such a claim).

Dismissal of Plaintiff's IIED claim would be warranted on an additional ground if either of Plaintiff's libel claims survived summary judgment because the IIED claim would be duplicative of the libel claims. Under New York law, a court must dismiss an IIED claim if they rely on the same underlying facts of an accompanying defamation claim. <u>Matthaus</u>, 148 A.D.3d at 425; <u>McCollum</u>, 688 F. Supp. 3d at 133; <u>Wolkstein</u>, 275 A.D.2d at 637. It is undisputed that Plaintiff's IIED and libel claims rely on the same underlying facts. Dkt. No. 4, at 4-6. New York law requires dismissal because they are duplicative.

### III.    "Peter Doo-Doo head, know shit about AI."

#### A. Defamation

In Defendant's motion for summary judgment, he contends that the Plaintiff's libel claims as to the "AI" comment must be dismissed. Dkt. No. 37, Attach. 11, at 4.

To support this, Defendant makes several arguments. First, Defendant argues that it is "a kindergarten level insult[,] not a statement of fact," and "an expression of opinion of Plaintiff's knowledge of [AI]." Id., at 5. In response, Plaintiff argues that Defendant "fails to explain why stating that an AI-focused entrepreneur and investor "doesn't know shit about AI" is "obviously" a "non-actionable opinion" as a matter of law. Dkt. No. 40, at 5-6. Second, Defendant argues that Plaintiff has "no proof that he suffered any actual damage." Dkt. No. 37, Attach. 11, at 4. In response, Plaintiff argues that Defendant is mistaken because Plaintiff testified that "the LinkedIn comments caused persistent sleeplessness and anxiety." Dkt. No. 40, at 6; Dkt. No. 40, Attach. 1, at 1.

Here, Plaintiff fails to establish the element of a "written defamatory statement of fact concerning the plaintiff," because Defendant's "AI comment" amounts to a non-actionable opinion. Celle, 209 F.3d at 178 ("expressions of 'pure' opinion receive absolute constitutional protection under the New York Constitution"); Celotex, 477 U.S. at 323 (summary judgment appropriate when a nonmoving party has failed to make a showing sufficient to establish the existence of an essential element.).

Whether a statement is an assertion of fact, "mixed opinion," or "pure opinion" is a question of law. Sheindlin, 597 F. Supp. 3d at 626. An assertion of fact is actionable under New York's libel law because assertions of fact can be proven false. Biro, 883 F. Supp. 2d at 459. Conversely, "pure opinion" is not actionable under New

York's libel law, because pure opinion is "deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." Mann v. Abel, 10 N.Y.3d 271, 276, 856 N.Y.S.2d 31, 885 N.E.2d 884 (2008). Between the two is a statement of "mixed opinion," an opinion that implies that it is based upon facts and is actionable under New York's libel law. Id. For a court to determine whether a statement is either an assertion of fact, mixed opinion, or pure opinion, it must consider "what the average person hearing or reading the communication would take it to mean." Id., at 1005. Courts apply a three-factor test to determine what that "average person" would "take it to mean." Id.

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal ... readers or listeners that what is being read or heard is likely to be opinion, not fact

Brian v. Richardson, 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 660 N.E.2d 1126 (1995). This "analysis should not consist of a mechanical enumeration of each factor adopted" but "should look to the over-all context in which the assertions were made and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" Flamm v. Am. Ass'n of Univ. Women, 201 F.3d 144, 153 (2d Cir. 2000) (quoting Brian, 87 N.Y.2d at 51). The "over-all context" involves tone of the communication, its apparent purpose, and the setting in which it was made. Id. at 153-54.

Considering Defendant's "AI" comment under the first factor of the three-factor test, the "specific language" of "[Plaintiff] Doo-Doo head, know shit about AI," does not have a "precise meaning" that is "readily understood. The first half of the comment, "Doo-Doo head," is unambiguous. It is an imaginative insult of Plaintiff and is "pure opinion." <u>Biro</u>, 883 F. Supp. 2d at 460 ("Often, statements of 'rhetorical hyperbole' or 'imaginative expression' are held not actionable, because they 'cannot reasonably be interpreted as stating actual facts' that could be proved false."); <u>Hayashi v. Ozawa</u>, No. 17-cv-2558 (AJN), 2019 WL 1409389, at *2 (S.D.N.Y. Mar. 28, 2019) (epithets are hyperbole and therefore not actionable opinion.)

However, the latter half of the comment can lead to at least two different interpretations. One interpretation is that Plaintiff is knowledgeable about AI. To "know shit" is to "be[] familiar with a topic." TO KNOW SHIT, Urban Dictionary, https://www.urbandictionary.com/define.php?term=to%20know%20shit, (last visited February 19, 2025).[5] Another interpretation is that Plaintiff is *not* knowledgeable about AI. This interpretation is the one Plaintiff asks the Court to adopt, and it would require the reader to read words or letters into to the comment to overcome its grammatical errors. Specifically, adding either "does not," as in "[Plaintiff] Doo-Doo head, [does not] know shit about AI," or an "s" to "know," as in "[Plaintiff] Doo-Doo

---

[5] "Where courts have referenced Urban Dictionary, they have typically done so only in passing to explain unfamiliar slang words or common phrases." <u>Stay You, LLC v. H&M Hennes & Mauritz, LP</u>, No. 20-cv-1396 (KMW), 2023 WL 3775282, at *3 (S.D.N.Y. June 2, 2023) (citing <u>Knowles v. United States</u>, No. 18-cv-1950, 2022 WL 999078, at *7 n.10 (S.D.N.Y. Mar. 30, 2022))

head, know[s] shit about AI." With this interpretation and its implied additions, the two portions of the comment would be consistent with each other, and its meaning would be more readily apparent, however, that comment is not before the Court. New York law does not require a mere "reasonable interpretation," instead it requires a "precise meaning which is readily understood." Brian, 87 N.Y.2d at 51. The "AI" comment's multiple interpretations deny the comment the necessary "precise meaning" that could be "readily understood."

Considering the second factor, assuming *arguendo* that the comment had a "precise meaning," it would be possible to prove or disprove whether Plaintiff had knowledge of AI.

Lastly, as to the third factor, the Court examines the context in which the "AI" comment was made and whether it signals to reasonable readers "that what is being read … is likely to be opinion, not fact." Id. Defendant made the "AI" comment on a post Plaintiff created on the professional social networking site LinkedIn. Dkt. No. 38, Attach. 9, at 7. On his post, Plaintiff discussed his thoughts on AI's effect on the job market. Id. Viewing the "AI" comment in this context, the Court concludes that a reader would view the comment as opinion rather than fact. A reasonable reader reading the "AI" comment, with its tone of anger, grammatical errors, and juvenile nature, would *not* conclude that its author was a professional or an expert that had factual information premising the comment. Instead, a reasonable reader would view the comment as an opinionated viewpoint given its hyperbolic and angry tone.

Rapaport v. Barstool Sports, Inc., No. 18-cv-8783 (NRB), 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021) (holding that a reasonable reader may view a hyperbolic statement with a tone of anger and resentment as opinion rather than fact.).

Considering the "AI" comment holistically under the three-factor test, the Court finds that the "AI" comment is non-actionable opinion, and the Court recommends granting Defendant's motion for summary judgment as to the libel *per quod* and *per se* claims concerning the "AI comment" and dismissing them. Accordingly, the Court recommends denying Plaintiff's motion for summary judgment as to the libel *per se* claim.

### B. Intentional Infliction of Emotional Distress

In Defendant's motion for summary judgment, he contends that the Plaintiff's IIED claim as to the "AI" comment must be dismissed. Dkt. No. 37, Attach. 11, at 6. In support of this motion, Defendant makes several arguments. First, Defendant centers on the "extreme and outrageous conduct" element and argues that "[b]eing called a Doo-Doo head is simply a school yard insult which children learn to live with," and it does not give rise to extreme and outrageous conduct. Id. In response, Plaintiff argues that the "AI" comment is "arguably outrageous because they publicly accuse" Plaintiff of lacking knowledge and credibility about AI in "professional forum" on a post Plaintiff made about AI. Dkt. No. 40, at 8. Second, Defendant argues that "other than hurt feelings, Plaintiff suffered no provable actual damage." Dkt. No. 37, Attach. 11, at 7. In response, Plaintiff argues that Defendant is mistaken because Plaintiff

testified that the comment caused "persistent sleeplessness and anxiety." Dkt. No. 40, at 6; Dkt. No. 40, Attach. 1, at 1.

Here, like the IIED claims concerning "Wage Theft" and "Accounting Fraud," the Court recommends granting Defendant's motion for summary judgment and dismissing Plaintiff's claim of IIED from Defendant's "AI" comment because Defendant's "AI" statement falls short of what other Courts have deemed "extreme and outrageous." Biberaj v. Pritchard Indus., 859 F.Supp.2d 549, 565 (S.D.N.Y.2012) (holding that supervisor's act of calling employee names including "bitch", "slut", "whore", "monkey face", and "animal" were insufficiently extreme and outrageous); Elmowitz v. Exec. Towers at Lido, LLC, 571 F.Supp.2d 370, 379 (E.D.N.Y.2008) (holding that publicly shouting derogatory remarks and hitting plaintiff multiple times with a telephone were insufficiently extreme and outrageous), Kaye, 58 A.D.3d at 873 (holding that making rude remarks, commencing two baseless lawsuits, and attempting to instigate an arrest were insufficiently extreme and outrageous to give rise to such a claim).

Dismissal of Plaintiff's IIED claim would be warranted on an additional ground if either of Plaintiff's libel claims survived summary judgment because the IIED claim would be duplicative of the libel claims. Under New York law, a court must dismiss an IIED claim if they rely on the same underlying facts of an accompanying libel claim. Matthaus, 148 A.D.3d at 425; McCollum, 688 F. Supp. 3d at 133; Wolkstein, 275 A.D.2d at 637. It is undisputed that Plaintiff's IIED and libel claims rely on the

same underlying facts. Dkt. No. 4, at 4-6. New York law requires dismissal because they are duplicative.

## RECOMMENDATION

For the aforementioned reasons, it is recommended that Defendant's motion for summary judgment be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED**.

As to Plaintiff's claims concerning the "Wage Theft" comment, the Court recommends:

1. **GRANTING** Defendant's motion for summary judgment on Plaintiff's libel *per quod* claim and dismissing it.

2. **GRANTING** Defendant's motion for summary judgment on Plaintiff's libel *per se* claim and dismissing it. Accordingly, the Court also recommends **DENYING** Plaintiff's motion for summary judgment on Plaintiff's libel *per se* claim.

3. **GRANTING** Defendant's motion for summary judgment on Plaintiff's IIED claim and dismissing it.

As to Plaintiff's claims concerning the "Accounting Fraud" comment, the Court recommends:

1. **GRANTING** Defendant's motion for summary judgment on Plaintiff's libel *per quod* claim and dismissing it.

2. **GRANTING** Defendant's motion for summary judgment on Plaintiff's libel *per se* claim. Accordingly, the Court also recommends **DENYING** Plaintiff's motion for summary judgment on Plaintiff's libel *per se* claim.

3. **GRANTING** Defendant's motion for summary judgment on Plaintiff's IIED claim and dismissing it.

Lastly, as to Plaintiff's claims concerning the "AI" comment, the Court recommends:

1. **GRANTING** Defendant's motion for summary judgment on Plaintiff's libel *per quod* claim and dismissing it. Accordingly, the Court also recommends

2. **GRANTING** Defendant's motion for summary judgment on Plaintiff's libel *per se* claim. Accordingly, the Court also recommends **DENYING** Plaintiff's motion for summary judgment on Plaintiff's libel *per se* claim.

3. **GRANTING** Defendant's motion for summary judgment on Plaintiff's IIED claim and dismissing it.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF. Any requests for an extension of time for filing objections must be directed to Judge Cronan. **Failure to file objections within fourteen days will result in a waiver of objections and**

**will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

The Clerk of Court is respectfully requested to close Dkt. Nos. 37 and 38.

SO ORDERED.

DATED:     New York, New York
           February 26, 2025

JENNIFER E. WILLIS
United States Magistrate Judge